FIELDING CHADWICK PHILLIPS, KAY PHILLIPS ELLIOTT, PAMELA PHILLIPS SULZER, JAMES GARNET GENIUS, ALBERT SIDNEY GENIUS, MARGARET ANITA GENIUS, LAURIE GENIUS CHAPPLE AND JAMES RODNEY GENIUS
v.
HERBERT R. WITTY
SUCCESSION OF NITA MARIE LEBEAU
No. 2008 CA 0111, Consolidated With 2008 CA 0966.
Court of Appeal of Louisiana, First Circuit.
June 6, 2008.
Not Designated for Publication
NEAL R. ELLIOTT, JR., Baton Rouge, LA., Plaintiffs/ Appellants, Fielding Chadwick Phillips, et al.
J. PEYTON PARKER, JR. Baton Rouge, LA., Counsel for Defendant/Appellee, Herbert R. Witty.
Before: WHIPPLE, GUIDRY, amd HUGHES, JJ.
HUGHES, J.
This appeal challenges whether the district court properly dismissed claims of improper procedure, mismanagement, and breach of fiduciary duty against an executor in a succession. For the reasons that follow, we reverse and remand.

FACTS AND PROCEDURAL HISTORY
On April 24, 1981, the succession of Nita Marie LeBeau, who died on April 18, 1981, was opened in the 18th Judicial District Court. On May 6, 1981, a petition to probate Miss LeBeau's last will and testament was filed. The will provided in pertinent part as follows:
I. Nita M. LeBeau, a resident of lawful age of the Parish of Pointe Coupee, State of Louisiana, do hereby make this my last will and testament, revoking all former wills which may have been made by me.
1.1 bequeath all of my interests in all immovable property owned by me as follows:
1) To my sister, Alta LeBeau Witty  two-thirds
2) To my nephew, Murray LeBeau  one-sixth
3) To my nephew, Malcolm Genius  one twenty-fourths
4) To my niece, Shirley G. Phillips  one twenty-fourths
5) To my nephew, Winston Genius  one twenty-fourths
6) To my nephew, Garnet Genius  one twenty-fourths
Should any of said legatees predecease me, the bequest to him or her, as stated above, shall be inherited by my lawful heirs according to law.
II. I desire that all of my debts be paid out of the cash money which I leave at my death; the balance of the cash money, in banks or otherwise, after the payment of my debts, I bequeath to my sister, Alta LeBeau Witty.
III. I will and bequeath to my sister, Alta LeBeau Witty, all certificates of stock and money in all homestead, building and savings and loan associations.
IV. I will and bequeath the balance of my estate to my sister, Alta LeBeau Witty.
V. Should my sister, Alta LeBeau Witty, predecease me, all of the above bequeaths [sic] made to her shall go to my nephew, Herbert R. Witty.
VI. I appoint Alta LeBeau Witty, executrix; in the event she should predecease me or is unable to so serve, I appoint my nephew, Herbert R. Witty.
Alta LeBeau Witty was confirmed as testamentary executrix for the succession of Miss LeBeau on May 6, 1981.
Mrs. Witty filed a detailed descriptive list showing as assets of the succession: an interest in three tracts of immovable property valued at $65,809.00; the mineral interests in the three tracts of land valued at $1,184,576.00; mineral royalty checks received in the amounts of $23,335.00 and $49,892.00; and numerous bank accounts, savings accounts, and certificates of deposits valued at $70,583.00. These assets totaled $1,394,195.00. Debts of the succession were listed in the detailed descriptive list totaling $74,240.00. The total value of the succession amounted to $1,319,955.00.
On May 24, 1982, Mrs. Witty filed a petition for possession in the district court, requesting that she be placed in possession of her share of the immovable property of the succession and accepting the legacy unconditionally.[1] Thereafter, the court signed a judgment sending Mrs. Witty into possession "of the legacy bequeathed to her by decedent of 2/3rds of the immovable property belonging to decedent."[2]
Annual accounts were filed by Mrs. Witty on September 16, 1982 and on July 11, 1983. The district court issued judgments homologating these accounts on April 24, 1984 and March 16, 1984, respectively.[3]
On July 11, 1983, Mrs. Witty petitioned the district to be relieved of her duties as executrix, due to personal illness. Mrs. Witty's son, Herbert R. Witty, joined in the motion seeking to be appointed as the alternate executor. The motion was granted and Mr. Witty was appointed executor of the estate. (Mrs. Witty died shortly afterwards.)
After his appointment as executor, Mr. Witty filed annual accounts on November 13, 1985 (for 1983-1985), March 4, 1987 (for 1986), March 18, 1988 (for 1987), June 1, 1989 (for 1988), May 11, 1990 (for 1989), May 13, 1991 (for 1990), June 9, 1992 (for 1991), November 24, 1993 (for 1992), May 19, 1994 (for 1993), February 17, 1995 (for 1994), January 14, 1997 (for 1995), January 14, 1997 (for 1996), February 6, 1998 (for 1997), March 18, 1999 (for 1998), May 4, 2000 (for 1999), July 13, 2004 (for 2000-2003), and February 26, 2007 (for 2004-2005). Judgments of homologation were signed by the district court as to all of these accounts.
On March 15, 2005, Mr. Witty petitioned the court to be discharged as executor, and to place Murray LeBeau in possession of his one-sixth legacy in the immovable property bequeathed to him under Miss LeBeau's will, and to place each of the three remaining one-twenty-fourth mineral interests, bequeathed to Shirley G. Phillips, Garnet Genius, and Malcolm Genius,[4] into the registry of the court.[5] Mr. Witty's motion was granted and the court issued judgment placing Murray LeBeau in possession of his legacy and depositing the remaining legacies in the court's registry; the judgment further "discharged and relieved [Herbert R. Witty] of all responsibility as executor in [the] succession upon payment of all court costs and attorney fees [then] due." Subsequently, the heirs of Shirley G. Phillips and Malcolm Genius also filed petitions for possession and were placed in possession of their interests in the succession.
On March 14, 2006, the plaintiffs, Fielding Chadwick Phillips, Kay Phillips Elliott, Pamela Phillips Sulzer, James Garnet Genius, Albert Sidney Genius, Margaret Anita Genius, Laurie Genius Chappie and James Rodney Genius (as heirs of Shirley Genius Phillips, Garnet Genius, and Malcolm Genius) filed a separate action in the 18th Judicial District Court, under suit number 39,853, entitled "Petition for Damages Arising from Testamentary Executor's Breach of Fiduciary Duty, Failure to Act as a Prudent Administrator and Breach of Duty to Close Succession," naming Mr. Witty as the defendant. In their petition for damages, the plaintiffs alleged that: Mr. Witty failed to file a final account in accordance with LSA-C.C.P. art 3332; a twenty-four year administration of the succession was unwarranted; Mr. Witty failed to timely contest the overpayment of inheritance and estate taxes; Mr. Witty profited as a shareholder or principal of H & W Exploration by means of the succession's contract for services with H & W Exploration; Mr. Witty failed to file an annual account for each and every year the succession was under administration; Mr. Witty kept the succession under administration in order to fund his executor's fee with the mineral interests and accompanying royalty payments; the immovable property of the succession was wrongly sold in 1994 for less than market value; the immovable property should not have been sold and that, rather, they should have been placed in possession of the property; Mr. Witty breached his fiduciary duty to collect, preserve, and manage succession property in accordance with LSA-C.C.P. art. 3191; and, the imprudent administration and breach of fiduciary duties by Mr. Witty damaged the plaintiffs.
Mr. Witty filed an answer to the suit denying the allegations. In brief to the district court, Mr. Witty attributed many of the problems that had arisen during the administration to the succession's first attorney, who was replaced in 1993 (i.e., early distribution of legacy to Mrs. Witty, and the overpayment of taxes). Further, Mr. Witty asserted that the extended administration of the estate was owing in part to a 1984 claim by Amoco to recoup previously overpaid royalties amounting to $240,284.44. Mr. Witty claimed that owing to his efforts, and those of his attorneys, he obtained the remission of $118,000.00 in overpayments through a 1992 compromise with Amoco.
On February 26, 2007, the executor sought court approval of an "Annual and Final Accounting ... for the Period of January 1, 2004 through December 31, 2005." On March 5, 2007, Fielding Chadwick Phillips, Kay Phillips Elliott, Pamela Phillips Sulzer, Albert Sidney Genius, Margaret Anita Genius, Laurie Genius Chappie and James Rodney Genius filed an "Opposition to 2004 and 2005 Annual and Final Accounting and Motion to Consolidate," asserting their rights as heirs of legatees Shirley Genius Phillips, Garnet Genius, and Malcolm Genius. The opposition alleged that the 2004 and 2005 "annual and final" account filed by the executor was not in compliance with the LSA-C.C.P. art. 3332 requirements for a final account in that there was no listing of all of the estate debts and legacies, or a breakdown of the proportionate shares of administrative expenses to be borne by each respective legatee. The opposition further claimed that there was no full and complete account of the administration, and that it was erroneous for a final account to contain only part of the assets of a succession. The opposition further asserted that the executor failed to prove that he had contributed his payment of a proportionate share of the total administrative expenses of the succession, out of his legacies or otherwise, as required by LSA-C.C. art. 1424. The opposition also sought consolidation of the succession proceeding with the separately-filed suit for damages against Mr. Witty. An order was signed by the district court on March 6, 2007, consolidating the two cases and setting the opposition for contradictory hearing.
Prior to the scheduled hearing, Mr. Witty filed an exception of res judicata. Following a January 29, 2007 hearing, the district court signed a judgment on February 26, 2007, granting the exception of res judicata "as to all accounts of the executor, Herbert R. Witty, in the record that have been duly homologated." The district court further ruled that "[a]s to these judgments, plaintiff[s'] suit is dismissed with prejudice." The executor was ordered to file "a last and final accounting for the period beginning January 2004 through March 5, 2005. "[6]
The trial court signed a "Judgment Homologating Annual and Final Accounting" on May 15, 2007. The district court thereafter denied the plaintiffs' motion for new trial.
Plaintiffs have devolutively appealed from the judgment of the trial court. On appeal, one assignment of error is urged: The trial court erred in granting the executor's exception of res judicata on the basis that plaintiffs' claims of breach of fiduciary duty and breach of duty to close the succession were barred by the judgments homologating the interim/annual accounts filed in the succession.

LAW AND ANALYSIS

Judgment Appealed
At the outset, we note that the plaintiffs' motion for devolutive appeal states: "plaintiffs ... desire to devolutively appeal the judgment in favor of defendant, Herbert Witty, which was read and signed on August 10, 2007." This description of the judgment appealed presents an ambiguity. The district court rendered judgment on July 17, 2007, denying the plaintiffs' motion for new trial; this judgment was signed on August 2, 2007 and filed into the record on August 10, 2007. The judgment granting Mr. Witty's exception of res judicata was rendered on January 29, 2007, signed on February 26, 2007, and filed into the record on March 7, 2007. The plain language of the plaintiffs' motion for appeal appears to appeal the denial of the motion for new trial rather than the granting of the exception of res judicata.
A judgment denying a motion for new trial is an interlocutory order, which is appealable only when expressly provided by law pursuant to LSA-C.C.P. art. 2083(C) (as amended); it is not a final appealable judgment. See McClure v. City of PineviLIe, XXXX-XXXX, p. 3 (La. App. 3 Cir. 12/6/06), 944 So.2d 805, 807, writ denied, XXXX-XXXX (La. 3/9/07), 949 So.2d 446. However, when a motion for appeal refers by date to the judgment denying a motion for new trial, but the circumstances indicate that the appellant actually intended to appeal from the final judgment on the merits, the appeal should be maintained as being taken from the judgment on the merits. Factors showing such an intent include: the appellant's assertion to that effect, whether the parties briefed issues on the merits of the final judgment, and whether the language of the order granting the appeal indicated that it was from the judgment denying a new trial. When it is clear that reference to the judgment denying a new trial was merely due to inadvertency, a court may conclude that an appellant actually intended to appeal from the judgment on the merits. Dura I v. City of Morgan City, 449 So.2d 1047, 1048 (La. App. 1 Cir. 1984). See also McCIure v. City of Pineville, XXXX-XXXX at p. 3,944 So.2d at 807.
In the instant case, the plaintiffs identified the judgment sought to be appealed as that rendered in favor of Mr. Witty and signed on August 10, 2007. The August 2007 date could only have applied to the judgment on the motion for new trial, but the judgment was not otherwise identified in the language of the motion for appeal. Notwithstanding, the plaintiffs' arguments before this court make it clear that the judgment intended for appeal was the February 26, 2007 judgment, granting the exception of res judicata. Thus, the appeal should be maintained as being taken from this judgment See Dural v. City of Morgan City, 449 So.2d at 1049; Fuqua v. Gulf Insurance Company, 525 So.2d 190, 192 (La. App. 3 Cir. 1988).
We further note that, on January 25, 2008, this court issued a rule to show cause in this case, questioning the finality of the judgment appealed under LSA-C.C.P. art. 1915(B), on account of the failure of the trial court to designate the partial judgment as final for purposes of appeal. This court's rule also granted the parties leave to supplement the record with the trial court's designation of finality. On February 20, 2008, the district court designated its January 29, 2007 judgment as final for purposes of appeal in accordance with LSA-C.C.P. art 1915(B)(1). Thereafter, on March 5, 2008, this court recalled the rule to show cause and maintained the appeal.

Exception of Res Judicata
In the two consolidated matters, the district court sustained the executor's exception of res judicata as to: (1) plaintiffs' opposition to the "annual and final" accounting in the succession of Miss LeBeau, and (2) plaintiffs' action against the executor for damages on account of improper procedure, mismanagement, and breach of fiduciary duties. In his argument in support of the exception of res judicata, the executor contended that prior judgments in the succession, homologating annual accounts filed by the executor, precluded subsequent re-litigation of the validity of those accounts in accordance with LSA-C.C.P. art 3337.[7] The district court agreed.[8]
The doctrine of res judicata is set forth in LSA-R.S. 13:4231, which was amended by 1990 La. Acts, No. 521. Section 5 of Act 521 provided: "This Act shall become effective January 1, 1991, and shall apply to all civil actions filed on or after January 1, 1991. The preclusive effect and authority of a judgment rendered in an action filed before the effective date of this Act shall be determined by the law in effect prior to January 1, 1991." Thus, the preclusive effect and authority of a judgment rendered in an action filed prior to January 1, 1991, is governed by LSA-R.S. 13:4231 as it read prior to the 1990 amendment. McCIendon v. State, Department of Transportation and Development, 94-0111, p. 3 (La. 9/6/94), 642 So.2d 157, 159.
In the instant case, the executor asserts that the judgments of homologation rendered in the succession proceeding preclude the plaintiffs' opposition to the "annual and final" accounting and their separate suit for damages. Since the succession proceeding was filed in 1981, well before the 1991 effective date of the 1990 amendment to LSA-R.S. 13:4231, LSA-R.S. 13:4231 must be applied as it read prior to the 1990 amendment:
The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.
The supreme court discussed former LSA-R.S. 13:4231 in McClendon as follows:
The theory of civilian res judicata is that matters actually litigated and finally adjudged are presumed correct and, thus, should not be contradicted in a subsequent suit. Louisiana legislative authority for res judicata establishes a presumption of correctness and precludes re-litigation of the object of the judgment only when there is (1) an identity of the parties, (2) an identity of "cause" and (3) an identity of the thing demanded. Under former Section 4231, this Court held that "in order for res judicata to apply, the thing demanded in the second action must be the same as the thing demanded in the first action which has been concluded by a definitive judgment; the demand must be founded on the same cause of action; and the demand must be between the same parties, formed by them against each other in the same quality."
McClendon v. State, Department of Transportation and Development, 94-0111 at p. 4, 642 So.2d at 159 (citations omitted).
The party urging the exception of res judicata has the burden of proving each essential element by a preponderance of the evidence. If any doubt exists as to its application, the exception of res judicata must be overruled and the second suit maintained. Further, a final judgment has the authority of res judicata only as to those issues presented in the pleadings and conclusively adjudicated by the court. Succession of Turner, 610 So.2d 919, 922 (La. App. 1 Cir. 1992).
After due consideration of these principles, we do not find that former LSA-R.S. 13:4231 precludes either the opposition filed in the succession or the separate action for damages. With respect to the executor's "annual and final" accounting filed in the succession proceeding, the plaintiffs, in effect, asserted that the executor did not comply with the requirements of LSA-C.C.P. art. 3332[9] in that he failed to list all of the assets and debts of the succession, and, pursuant to LSA-C.C. art. 1424,[10] he failed to apportion administrative expenses proportionally against all of the legatees.[11] In the plaintiffs' separate action for damages, they allege, basically, that the executor employed improper procedures during the administration of the succession, that he breached his fiduciary duties, mismanaged the administration of the succession, and that either he or his company, H & W Exploration, impermissibly profited from the lengthy administration of the succession.
Clearly the thing demanded by the executor in procuring the judgments of homologation, upon which his exception of res judicata rests, was not the same thing as subsequently demanded by the plaintiffs. The judgments of homologation were rendered on the executor's motion for approval of his annual accounts, which itemized for a particular period of time the executor's receipt and disbursement of succession funds, while the plaintiffs have demanded damages and relief on account of the executor's alleged mishandling of the estate. The annual accounts filed by the executor itemized only "CASH ON HAND" and "EXPENDITURES;" they did not list any debts that might have been owed to the succession (such as the proportionate share of administration expenses the plaintiffs claimed Mr. Witty owed to the succession as the heir of Mrs. Witty's two-thirds share of the immovable property of the estate or any damages he might owe for mishandling the estate).[12]
Plaintiffs' statements, made in brief to this court, illustrate this distinction:
Plaintiffs do not oppose any of the expenditure amounts in these [annual] accounts and are simply using them as the only evidence in the succession record memorializing the amount of administrative expenses incurred during the administration.
.. .In the present matter, plaintiffs are not attacking the validity of fees and expenses listed on any annual or interim account, but are claiming that Mr. Witty committed misfeasance in his position as fiduciary by charging plaintiffs a disproportionate share of debts and administrative expenses and failing to pay his large proportionate share and claiming waste for the unnecessary administrative expenses resulting from the failure to close the Succession.
The term "cause of action," as used in former LSA-R.S. 13:4231, means the "legal obligation upon which the action is founded." Succession of Turner, 610 So.2d at 921-22. In the instant case, the legal obligation upon which the judgments approving or homologating Mr, Witty's annual accounts was based on Mr. Witty's obligation to "show the money and other property received by and in the possession of the succession representative at the beginning of the period covered by the account, the revenue, other receipts, disbursements, and disposition of property during the period, and the remainder in his possession at the end of the period," as required by LSA-C.C.P. art. 3333. These annual accounts were approved by judgment of the district court on motion of the executor, who was seeking to satisfy this reporting requirement. In contrast, the actions brought by the plaintiffs question whether the executor has fulfilled his duty as "a fiduciary with respect to the succession, and [his] duty of collecting, preserving, and managing the property of the succession," as required by LSA-C.C.P. art. 3191, as well as, the executor's duty "to close the succession as soon as advisable," as directed by LSA-C.C.P. art. 3197.[13]
The district court issued judgments approving Mr. Witty's annual accounts, which arguably forecloses re-litigation of the correctness of the amounts received and disbursed, as itemized therein.[14] However, the issues currently being raised by the plaintiffs (whether the executor owes the estate for his proportionate share of administrative expenses and/or damages for mismanagement of the estate) have not previously been litigated, and thus, cannot be foreclosed from litigation by the principles of res judicata set forth in former LSA-R.S. 13:4231.
Accordingly, we conclude that the judgments of homologation could not properly serve as the bases of an exception of res judicata, under former LSA-R.S. 13:4231, to preclude the subsequent demands made by the plaintiffs against the executor arising from his alleged mishandling of the succession. Therefore, the district court erred in sustaining Mr. Witty's exception of res judicata.[15]

CONCLUSION
For the reasons assigned, the judgment of the district court sustaining Herbert R. Witty's exception of res judicata is reversed, and the matter is remanded to the trial court for further proceedings in accordance with the foregoing. All costs of this appeal are to be borne by Herbert R. Witty.
REVERSED AND REMANDED.
NOTES
[1] Under the law in effect at that time, an unconditional acceptance rendered the accepting heir personally liable for the debts of the deceased even if those debts exceeded the assets of the estate. See Frederick William Swaim, Jr. and Kathryn Venturatos Lorio in 10 La. Civ. L. Treatise. Successions and Donations, § 7.2.
[2] In conjunction with her petition for possession of her legacy, Mrs. Witty submitted a copy of the inheritance tax return filed with the Louisiana Department of Revenue showing inheritance and estate taxes due in the amount of $89,642.00. Also, a receipt from the Department of Revenue showed that of this amount $63,815.00 had been paid, which was the amount of the tax due on Mrs. Witty's legacy.
[3] An opposition to the first annual account was initially filed by Shirley Genius Phillips, Malcolm Genius, Garnet L. Genius, Brenda Genius Stapleton, and James Dale Genius, who asserted that the partial judgment of possession in favor of Mrs. Witty was improper and that the books and records upon which the account was based had not been examined by the parties in opposition. The opposition was, apparently, later withdrawn.
[4] In this pleading, Mr. Witty stated that of the original legatees under the will, only Murray LeBeau was stilt living at that time. Further, it was asserted that Winston Genius, who inherited a one-twenty-fourth interest in the immovable property under Miss LeBeau's will, predeceased Miss LeBeau, and that his lapsed legacy was inherited by Mrs. Witty, although it does not appear that any of the judgments of possession rendered by the district court disposed of this interest. Because the heirs of the deceased legatees had not established to the satisfaction of the executor their right to inherit, those interests were initially deposited in the registry of the court.
[5] While Miss LeBeau's will bequeathed an interest in three tracts of immovable property, the executor found it necessary to petition the court for authority to sell the immovable property to pay debts of the succession, which was granted on February 28, 1994. Miss LeBeau's interest in the three tracts of land was stated as an 11% interest. The entire parcel was appraised as having a value of $432,000.00, and thus the succession's interest had an approximate value of $47,520.00. The district court authorized the property to be sold for $44,031.61; however, the succession retained the mineral rights. Therefore, after this sale, the only rights to the immovable property left to be distributed to the heirs were the mineral rights.
[6] We note that the 2004-2005 "annual and final" accounting that had previously been filed on February 26, 2007 encompassed this time period, ending on December 31, 2005; no additional "final accounting" appears in the record on appeal.
[7] A judgment homologating any account other than a final account shall be prima facie evidence of the correctness of the account. A judgment homologating a final account has the same effect as a final judgment in an ordinary action. LSA-C.C.P. art. 3337.
[8] The reasons given by the trial court for sustaining the exception of res judicata were:

Based on the conversations that we had in chambers and ... my looking at the record in this matter, this is the decision of the court.
It appears that there was a Motion and Order to Homologate an Annual Accounting that was filed on March the 9th, 2005, and there was a  there was a Discharge of the Executor on March 15th of 2005, is what I'm reading here. May 15th of 2004 to March 15th of 2005, that's the two dates I'm looking at.
From the time of the Homologation of the Final  of the last distribution, I should say, the last accounting, 2004, until he was actually discharged, that's the time period we're looking at. That's the time  so, if anything is owed during that time period, that's what I will entertain. Other than that, everything else is res judicata under the case law, as best I can read it.
[9] A succession representative may file a final account of his administration at any time after homologation of the final tableau of distribution and the payment of all estate debts and legacies as set forth in the tableau. The court shall order the filing of a final account upon the application of an heir or residuary legatee who has been sent into possession or upon the rendition of a judgment ordering the removal of a succession representative. LSA-C.C.P. art. 3332.
[10] Administration expenses are charged ratably to the fruits and products of property that is the object of the general or universal legacies and property that devolves by intestacy. When the fruits and products do not suffice to discharge the administration expenses, the remaining expenses are charged first to the property itself, next to the fruits and products of property that is the object of particular legacies, and then to the property itself. LSA-C.C. art. 1424.
[11] We note that the legacy to Mrs. Witty was distributed to her by judgment of possession dated May 24, 1982, prior to the date that the first annual account was filed by Mrs. Witty on September 16, 1982. Upon review of this annual account and the eighteen that followed, it would appear that, though the record does not conclusively establish the fact, all mineral interest royalties due Mrs. Witty, on her share of the immovable property, were paid directly to Mrs. Witty or her successor (the record reflects that Mrs. Witty sold her interest in the immovable property of the succession to H & W Exploration in 1982). The annual accounts indicated that over $800,000.00 was collected in assets and income by the succession. The record does not clearly demonstrate whether these funds were exclusively derived from the one-third share of the estate's immovable property remaining in the succession, following the judgment of possession in favor of Mrs. Witty, or whether they were also generated in part from Mrs. Witty's share of the estate, though it appears that the former is more likely. What is clear is that from these assets and income the following expenses were deducted: $7,564.22 in expenses directly related to the deceased's last illness and death; $665,072.75 in payments to the Internal Revenue Service and the Louisiana Department of Revenue; $68,090.13 in executor's fees and expenses, and payments to H & W Exploration; and $122,481.23 in attorney fees, certified public accountant fees, tax preparation fees, appraisal fees, bank fees, and other miscellaneous litigation expenses. Although on the second annual account it was stated that $48,000.00 was received from Mrs. Witty, there is no indication on any of the other annual accounts that either Mrs. Witty or her successor-in-interest and current executor, Herbert R. Witty (either in his individual capacity or as owner of H & W Exploration), ever contributed to the payment of the administration expenses. If the more than $700,000.00 in mineral royalty income collected by the succession, after Mrs. Witty was placed in possession of her two-thirds share of the estate's immovable property, was produced exclusively by the other heirs' one-third share, then Mrs. Witty (or her designee, H & W Exploration) would have been paid, separately, more than $1,400,000.00. Mrs. Witty's co-heirs (plaintiffs herein) ostensibly maintain that all of the legal and other expenses, related to preserving all of the heirs' interests in the estate's immovable property and mineral interests therein, were charged against only their interests, which exclusively remained under administration.
[12] Although the 1986 through 1991 annual accounts included a section entitled "Outstanding Obligations to be Paid," this section included only one debt; i.e., the amount of attorney's fees owed by the succession to the succession attorney. None of the annual accounts ever listed debts owed by anyone to the succession.
[13] We note that in reasons for judgment resolving a 1993 attorney's fee dispute between the executor and the succession's first attorney of record, the district court stated:

Two-thirds of the immovable property, including mineral rights, has already been distributed to Alta LeBeau Witty, Mr. Witty's mother, by Judgment of Possession. Although that portion of the property is no longer in the Succession, the Estate of Alta LeBeau Witty and Mr. Witty as her sole heir and legatee is responsible for a pro-rata share of debts and charges of the Succession of Nita LeBeau, including Federal Estate Taxes, attorneys fees and costs of court.
Further, in a brief filed before the district court, Mr. Witty stated:
There is no question under Louisiana law that the heirs in a succession bear their proportionate share of the expenses  both administrative and otherwise in a succession. This matter was determined judicially previously by Judge Claiborne when he decided the case concerning the attorney fees of D'Amico and Curet..,.
These statements of record present, at the least, a reasonable basis for the Wittys' co-heirs to believe that the proportionate share of expenses owed by the Wittys would be contributed prior to the close of the succession.
[14] Because we find the essential elements of res judicata lacking in the instant case, we find it unnecessary to address the argument made by Mr. Witty that his plea of res judicata is warranted by LSA-C.CP. art. 3337, which provides that "[a] judgment homologating any account other than a final account shall be prima facie evidence of the correctness of the account."
[15] Although the plaintiffs have requested that this court conduct a de novo review of their contentions and render judgment in their favor, no evidentiary hearing was conducted on these issues in the district court. Since the record before this court is incomplete, we must remand the matter to the district court.